Hong MAI SA, Plaintiff–Appellant,

v.

John DOE, Warden, Commissioner of New York State Dept. of Labor, Jane Doe, Chief of New York State, Defendant–Appellee.

Docket Nos. 04–3065–CV, 04–3067–CV, 04–3085–CV, 04–3087–CV.

United States Court of Appeals, Second Circuit.

Submitted: Sept. 1, 2004.

Decided: April 29, 2005.

---

Hong Mai, pro se, Far Rockaway, NY, Appellant.

Before: JACOBS, POOLER, SOTOMAYOR, Circuit Judges.

JACOBS, Circuit Judge.

Hong Mai is a sanctioned litigant in the United States District Court for the Eastern District of New York as well as in this Court. She moves to be heard *in forma pauperis* in two petitions for a writ of mandamus and two appeals (docket num-

bers 04–3065, 04–3067, 04–3085, and 04–3087), each of which challenges the district court's refusal to accept for filing or to docket Hong Mai's papers. We construe all of the filings as petitions for writs of mandamus, deny them, and deny the motions for *in forma pauperis* status.

In October 2000, Hong Mai was enjoined from filing any document in the district court without prior approval. The text of the order is set out in the margin.* In May 2001, this Court enjoined Hong Mai from "filing any further papers in this Court unless leave of Court has first been obtained to file such papers."

In January 2003, Hong Mai violated the district court order by giving to the clerk of that court two sets of papers. It does not matter how they were styled or what they contained. The papers were returned to Hong Mai by mail, with a transmittal letter from the district court's *pro se* office advising that the papers were received by Judge Ross of that court, and rejected by her. It appears that, pursuant to the practice of the Eastern District of New York, the papers were returned without filing or docketing.

In February 2003, Hong Mai filed two mandamus petitions in this Court seeking to compel the district court to consider the papers she had submitted there. Pursuant to our May 2001 sanctioning order, the clerk of this Court directed Hong Mai to file motions for leave to appeal. Instead, Hong Mai filed: two new mandamus petitions, claiming that this Court's May 2001 sanctioning order did not apply to her petitions; and two notices of appeal (one in each of two district court cases), attacking the district court's refusal to accept her filings. In June 2004, this Court granted Hong Mai leave to file her appeal:

> It is ordered that the notice of appeal[s] and the mandamus petition[s] are construed as including a motion for leave to file an appeal, and leave to file the appeal and petition is granted because appellant seeks to pursue non-frivolous issues. The district court may have erred by failing to file the summary judgment motion and enter an order either denying leave to file or deciding the merits of the motion. A regular panel of judges will decide: (a) if this appeal has an arguable basis in law or fact, as part of its determination of whether appellant should be granted in forma pauperis status; and (b) if the proper means of challenging the district court's action is by mandamus or appeal, or if such a determination is unnecessary in the present case. No opinion is expressed on the merits of the summary judgment motion.

The motions now presented to this panel are for status *in forma pauperis*. At that juncture, or at any time, a court may dismiss the underlying claim if it is "frivolous or malicious," or "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B). An appeal is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). The issue posited in our June 2004 order is whether the district court

---

* ORDERED and ADJUDGED that . . . plaintiff is enjoined from filing any document in this District without prior approval of Magistrate Judge Pollak; that any motion for leave to file must be captioned, "Application Pursuant to Court Order Seeking Leave to File"; that plaintiff must attach a copy of her proposed complaint and attach a copy of the Court's order dated October 10, 2000, with each and any such motion; and, that should plaintiff violate this order and file any action without first filing a motion to seek leave to file, the Clerk of the Court is directed to close the case upon filing and the defendants to any such action shall not be required to make any response absent further order of the Court.

erred in failing to file the papers offered for filing and in failing to decide the issues in them—other than by the decision of Judge Ross to reject them for filing.

 No due process issue is presented by that procedure and disposition. If a litigant has a history of filing " 'vexatious, harassing or duplicative lawsuits,' " courts may impose sanctions, including restrictions on future access to the judicial system. *Iwachiw v. N.Y. State Dep't of Motor Vehicles*, 396 F.3d 525, 528 (2d Cir. 2005) (quoting *Safir v. United States Lines, Inc.*, 792 F.2d 19, 24 (2d Cir.1986)). An order bars Hong Mai from filing the papers she now says should have been accepted for filing. Any challenge to the procedures authorized by that order either were or could have been raised on the direct appeal from that order. We evidently saw no problem, and entered our own anti-filing injunction. Accordingly, the district court clerk was not obliged to accept Hong Mai's papers or to docket them, unless and until the assigned judicial officer (here, Judge Ross) granted an application for leave to file. Indeed, since no application for leave to file was submitted with those papers, there was no need under the order to submit the papers to Judge Ross before rejecting and returning them.

The district court's procedure for dealing with Hong Mai's papers prevents the development of the filed record usually required by an appellate court. At the same time, if the district court clerk were to accept Hong Mai's papers for filing, assign a docket number to every bunch of papers that lacks one, and file under that docket such things as the rejection letter, motions for reconsideration, and so on, the court would be submitting to the very imposition and abuse that the injunction was designed to end—and does end.

 Of course, without a docket or a record, no appeal in the ordinary sense can be taken or considered by this Court. This does not mean, however, that there is no way to scrutinize the rejection by the district clerk of filings made in violation of the sanction order or the rejection by a district judge or a magistrate judge of filings made in compliance with it. Where appropriate, this Court may construe an appeal as a petition for mandamus. *See Caribbean Trading & Fid. Corp. v. Nigerian Nat'l Petroleum Corp.*, 948 F.2d 111, 115 (2d Cir.1991) ("We have often deemed it appropriate to treat an appeal dismissed for lack of jurisdiction as a petition for a writ of mandamus."); *Richardson Greenshields Secs., Inc. v. Lau*, 825 F.2d 647, 652 (2d Cir.1987) ("[W]e may in appropriate circumstances treat an attempted appeal as a request for leave to file a petition for a writ of mandamus."). An appellate challenge (however styled) to a court's refusal to accept for filing papers that were submitted in violation of an anti-filing injunction, or in compliance with one, will be construed as petitions for mandamus and docketed as such in this Court. In considering such petitions, we will review the docketed papers (if any) as well as the documents attached to the litigant's appellate filings, and we can take judicial notice of this Court's files as well as those of the district court. This procedure assures the sanctioned litigant sufficient review without enabling the abuse of the courts.

 A mandamus petition is granted "only where the petitioner's right to relief is 'clear and indisputable.' " *In re FCC*, 217 F.3d 125, 134 (2d Cir.2000) (quoting *In re IBM Corp.*, 45 F.3d 641, 643 (2d Cir. 1995)). "Mandamus is not used simply to correct error"; rather, "[i]t is reserved for 'judicial usurpation[s] of power' by inferior courts." *Id.* at 133 (quoting *Will v. United States*, 389 U.S. 90, 95, 88 S.Ct. 269, 19

L.Ed.2d 305 (1967)). Indeed, "[a]n appellate court should not issue mandamus to correct even gross error, but should issue the writ when necessary 'to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.'" *Richardson Greenshields Secs., Inc.*, 825 F.2d at 652 (2d Cir.1987) (quoting *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26, 63 S.Ct. 938, 87 L.Ed. 1185 (1943)) (internal citation omitted).

We thus construe all of Hong Mai's motions and appeals as petitions for mandamus. Upon reviewing them, we conclude that she fails to support her burden of demonstrating that the district court has engaged in an "[un]lawful exercise of its prescribed jurisdiction" or failed to "exercise its authority when it [was] its duty to do so." *Richardson Greenshields Secs., Inc.*, 825 F.2d at 652 (2d Cir.1987) (quotation marks omitted). Hong Mai's petitions for mandamus are denied (*Hong Mai v. Callahan*, 04–3087, and *Hong Mai v. Doe*, 04–3067); her appeals are construed as petitions for mandamus and denied (*Hong Mai v. Callahan*, 04–3085, and *Hong Mai v. Doe*, 04–3065); and her motions for *in forma pauperis* status are denied. All other pending motions are likewise denied.